IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| CULLY CORPORATION, INC.,<br><br>        Plaintiff,<br><br>vs.<br><br>NORTH SLOPE BOROUGH and STATE OF ALASKA, DEPARTMENT OF NATURAL RESOURCES,<br><br>        Defendants. | **CORRECTED ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT AND REMANDING THE CASE TO STATE COURT**<br><br>Case No.: 2:23-cv-00001-JMK |

This case involves gravel extraction and storage within Sections 29–32 of Township 5 North, Range 44 West, Umiat Meridian ("Sections 29–32"). Central to the parties' dispute is whether Cully Corporation Inc. ("Cully"), or the State of Alaska ("State") owns the surface estate of the Kokolik River within Sections 29–32.[1] At Docket 9, Cully filed a Motion for Summary Judgment concerning its alleged ownership of the bed of the Kokolik River in Sections 29–32. At Dockets 14 and 15, the North Slope Borough ("NSB"), and the State filed Cross-Motions for Summary Judgment against Cully regarding ownership of the bed of the Kokolik River and on Cully's state law claims. The

---

[1] Docket 11 at 27 ("Plaintiff prays for the following relief: A ruling that Cully, not the State, owns legal title to the area encompassing the submerged lands underlying the Kokolik river where the Borough has dredged for gravel from the 1980s through the present within Township 5 North, Range 44 West, Sections 29–33, Umiat Meridian.").

Motions are fully briefed.[2] As set forth below, Cully's Motion for Partial Summary Judgment at Docket 9 is **GRANTED**. Defendant's motions at Dockets 14 and 15 are **DENIED**. The case and its remaining state law issues is **REMANDED** back to the Superior Court for the State of Alaska.

## I. BACKGROUND

**(A) Ownership History of Sections 29–32**

In 1943, the federal government issued Public Land Order 82 ("PLO 82") withdrawing 48,800,000 acres "from sale, location, selection, and entry,"[3] including Sections 29–32.[4] When Alaska became a State in 1959, ownership of the beds of navigable waters withdrawn by PLO 82 did not pass to the State as they normally would have pursuant to the equal footing doctrine.[5] However, the Alaska Statehood Act authorized the State to select and have transferred to it roughly 105 million acres of "vacant, unappropriated and unreserved" federal land.[6] In 1960, one year after Alaska became a state, the Secretary of the Interior ("Secretary") revoked PLO 82.[7]

The State, pursuant to the Alaska Statehood Act, began the process of selecting lands for conveyance from the federal government to the State. This process included submitting applications to the Department of Interior ("DOI"). Because the

---

[2] *See* Dockets 20, 21, 26, & 28.
[3] *Alaska v. United States*, 213 F.3d 1092, 1093 (9th Cir. 2000) (quoting 8 Fed. Reg. 1599 (Feb 4, 1943))..
[4] 8 Fed. Reg. 1599-02 (Feb 4, 1943) (withdrawing lands north of the Brooks Range from the U.S. border with Canada to the Arctic Ocean).
[5] *Alaska v. United States*, 213 F.3d 1092, 1098 (9th Cir. 2000).
[6] Alaska Statehood Act Pub. L. No. 85-508, 72 Stat. 339, 340 (1958).
[7] 25 Fed. Reg. 12,599-01 (Dec. 9, 1960).

*Cully Corp., Inc. v. North Slope Borough, et al.*     Case No. 2:23-cv-00001-JMK
Corrected Order Granting Motion for Partial Summary Judgment and Remanding to State Court     Page 2 of 17
Case 2:23-cv-00001-JMK    Document 45    Filed 02/14/24    Page 2 of 17

Secretary had revoked PLO 82, some of the State's applications sought lands formerly reserved by PLO 82, relevant to this case is Application F-033702, which sought transfer of lands including Sections 29–32.[8] Several months after the State submitted Application F-033702, DOI issued a tentative approval for much of the lands selected by the State, including Application F-033702.[9] DOI's tentative approval contemplated that a land patent would be issued to the State before conveyance would become final.[10]

Sections 29–32 were never patented to the State. In 1971, Congress passed the Alaska Native Claims Settlement Act ("ANCSA") to settle aboriginal claims over areas where Alaskan Natives had lived for thousands of years.[11] Among other things, ANCSA withdrew some townships which that had been "tentatively approved to, but not yet patented to, the State under the Alaska Statehood Act."[12]

In 1977, DOI followed up on its December 1965 tentative approval with a subsequent decision ("1977 Decision").[13] The 1977 Decision explained that Cully had filed an application, pursuant to ANCSA, seeking lands in and around the Native Village. Because the lands DOI had tentatively approved for conveyance to the State overlapped with lands that ANCSA made proper for conveyance to Native Villages, the 1965 tentative approval was "vacated in part."[14] The 1977 Decision approved for interim conveyance

---

[8] Docket 9-6 at 1 (selecting 5 North 44 and 45 West).
[9] Docket 9-6 at 1–2.
[10] Docket 9-6 at 2.
[11] *Sturgeon v. Frost*, 139 S. Ct. 1066, 1074 (2019).
[12] 43 U.S.C. § 1610(a)(2).
[13] Docket 9-7.
[14] Docket 9-7 at 1–2.

*Cully Corp., Inc. v. North Slope Borough, et al.*                                                            Case No. 2:23-cv-00001-JMK
Corrected Order Granting Motion for Partial Summary Judgment and Remanding to State Court      Page 3 of 17
Case 2:23-cv-00001-JMK    Document 45    Filed 02/14/24    Page 3 of 17

Sections 29–32 to Cully, but excluded "the Kokolik River upstream from its mouth to the east line of section 29."[15] Subsequently, in 1977, DOI issued Interim Conveyance No. 56 to Cully for lands in and around Point Lay Village, including Sections 29–32, but excluding the Kokolik River.[16] In 1980, Congress passed 43 U.S.C. § 1631(b)(1), which vests ownership to the riverbed of meanderable rivers where the surrounding land has been conveyed pursuant to ANSCA or the Alaska Statehood Act. In 1990, DOI issued Patent Number 50-90-0649, which patented to Cully most of the lands in Sections 29–32, including the lands surrounding the Kokolik River in Sections 29–32.[17]

**(B)  Gravel Operations in Sections 29–32**

In 1981, NSB applied to the State for a Material Sale Contract to extract 500,000 cubic yards of gravel from the bed of the Kokolik River within Sections 29–30.[18] In 1984, NSB proceeded to dredge materials from the bed of the Kokolik River without authorization from the State.[19]

In 1990, NSB again applied to the State for a Material Sale Contract, this time seeking to extract 300,000 cubic yards of gravel from bed of the Kokolik River within Sections 29–30.[20] The Army Corps of Engineers and the State of Alaska Division of Governmental Coordination both published notice of NSB's application.[21] In 1991, the

---

[15] Docket 9-7 at 2–3.
[16] Docket 9-10 at 1.
[17] Docket 9-11.
[18] Docket 14-3 at 24; Docket 15-2 at 1–2.
[19] Docket 15-5 at 1–2.
[20] Docket 14-3 at 33–39.
[21] Docket 14-3 at 44–52.

*Cully Corp., Inc. v. North Slope Borough, et al.*  Case No. 2:23-cv-00001-JMK
Corrected Order Granting Motion for Partial Summary Judgment and Remanding to State Court   Page 4 of 17
Case 2:23-cv-00001-JMK   Document 45   Filed 02/14/24   Page 4 of 17

State and NSB entered into a Material Sale Contract permitting NSB to extract 300,000 cubic yards of gravel from the bed of the Kokolik River within Sections 29–30 at no cost to NSB.[22]

In January 1999, NSB applied a third time to the State for a Material Sale Contract seeking to extract 500,000 cubic yards from the Kokolik River within Sections 29–32.[23] Notice of NSB's application was again provided via publication.[24] In March 1999, Lily Anniskett wrote to NSB on behalf of Cully, requesting that NSB lease the gravel it was extracting as well as the site where NSB was storing the gravel.[25] In turn, NSB reached out to the State regarding Cully's proposal.[26] The State responded to NSB, indicating that the State owns the riverbed of the Kokolik River within Sections 29–32.[27] In October 1999, the State and NSB finalized their second Material Sale Contract, permitting NSB to extract 500,000 cubic yards of gravel from the bed of the Kokolik River within Sections 2932 at $0.50 per cubic yard for a total cost of $250,000.[28] NSB has not extracted gravel from the bed of the Kokolik River since 1999.[29]

---

[22] Docket 14-3 at 63–76.
[23] Docket 14-3 at 80–82.
[24] Docket 14-4 at 1–18.
[25] Docket 14-4 at 21.
[26] Docket 14-4 at 22.
[27] Docket 14-4 at 24 ("[T]he state owns the tidelands to the mean high water line in the case of the Kokolik River.").
[28] Docket 14-4 at 31–40; Docket 15-4.
[29] Docket 14-1 at ¶ 7.

*Cully Corp., Inc. v. North Slope Borough, et al.*                                                        Case No. 2:23-cv-00001-JMK
Corrected Order Granting Motion for Partial Summary Judgment and Remanding to State Court      Page 5 of 17
Case 2:23-cv-00001-JMK     Document 45     Filed 02/14/24     Page 5 of 17

In February 2013, the State determined that it did not own the bed of the Kokolik River within Sections 2932.[30] Subsequently, in 2014, the State withdrew its designation of the relevant area as a "material sale site."[31] In 2018, the State changed course and believing to own the bed of the Kokolik River within Sections 29–32, the State redesignated the area as a "material sale site."[32] Lastly, in 2021 and 2022, some of the gravel stored within Sections 29–32 was removed for projects in the village of Point Lay.[33]

## II.  LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[34] A material fact is one that "might affect the outcome of the suit under the governing law."[35] "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[36]

The party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact.[37] To establish that a fact cannot be genuinely disputed, the movant can either cite the record or show "that the materials cited

---

[30] Docket 15-38 at 2 ("February 20, 2013 – It has been determined that the State does not own the shorelands within the Kokolik River in this area [Sections 29–32] due to PLO 82. The adjacent land owner has title to the shorelands.").
[31] Docket 15 at 30 n. 95 (citing Docket 15-38).
[32] Docket 15 at 30 n. 95 (citing Docket 15-38).
[33] Docket 14-1 at ¶ 9–10.
[34] Fed. R. Civ. P. 56(a).
[35] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[36] *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1031 (9th Cir. 2010).
[37] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

*Cully Corp., Inc. v. North Slope Borough, et al.*                                                                                Case No. 2:23-cv-00001-JMK
Corrected Order Granting Motion for Partial Summary Judgment and Remanding to State Court              Page 6 of 17
Case 2:23-cv-00001-JMK    Document 45    Filed 02/14/24    Page 6 of 17

do not establish the . . . presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."[38]

Once the movant has made such a showing, the non-movant "bears the burden of production under [FRCP] 56 to 'designate specific facts showing that there is a genuine issue for trial.'"[39] The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."[40] A party cannot "defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements."[41]

"If a moving party fails to carry its initial burden of production, the non-moving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial."[42] Ultimately, in ruling on a motion for summary judgment, the court must view the facts and draw all reasonable inferences in the light most favorable to the non-moving party.[43]

"[W]hen parties submit cross-motions for summary judgment, each motion

---

[38] Fed. R. Civ. P. 56(c)(1).
[39] *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).
[40] *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (internal citation omitted); *se e also Liberty Lobby*, 477 U.S. at 252 (specifying that the non-movant "must show more than the mere existence of a scintilla of evidence"); *accord In re Oracle Corp. Secs. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).
[41] *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003).
[42] *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102–1103 (9th Cir. 2000).
[43] *Scott v. Harris,* 550 U.S. 372, 378 (2007).

*Cully Corp., Inc. v. North Slope Borough, et al.*　　　　　　　　　　　　　　　Case No. 2:23-cv-00001-JMK
Corrected Order Granting Motion for Partial Summary Judgment and Remanding to State Court　　　Page 7 of 17
Case 2:23-cv-00001-JMK　　Document 45　　Filed 02/14/24　　Page 7 of 17

must be considered on its own merits."[44] The court rules on each motion "on an individual and separate basis."[45]

## III. DISCUSSION

**(A) Ownership of Sections 2932**

Cully argues that it owns the bed of the Kokolik River in Sections 29–32 by virtue of Patent 50-90-0649 and operation of 43 U.S.C § 1631(b)(1).[46] The parties do not dispute that Cully owns the uplands surrounding the Kokolik River.[47] In Cully's view, DOI's 1977 Decision completely removed any and all property interest the State previously had in Sections 29–32, including any interest in the bed of the Kokolik River.[48] According to Cully, the federal government retained ownership over the bed of the Kokolik River and approved conveyance of the remaining uplands in Sections 29–32 to Cully.[49] Lastly, when Patent 50-90-0649 finalized the transfer of the uplands in Sections 29–32 to Cully, the

---

[44] *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (citations and quotation omitted).
[45] *Tulalip Tribes of Wash. v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015) (quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Fed. Prac. & Proc. § 2720 (3d ed. 1998)).
[46] Docket 9-1 at 20.
[47] *See* Docket 15 at 19 n. 60 ("The State does not dispute that Cully owns the uplands in vicinity of the Kokolik River,").
[48] Docket 9-1 at 28–31.
[49] Docket 9-1 at 28–32.

*Cully Corp., Inc. v. North Slope Borough, et al.*　　　　　　　　　　　　　　Case No. 2:23-cv-00001-JMK
Corrected Order Granting Motion for Partial Summary Judgment and Remanding to State Court　　　Page 8 of 17
Case 2:23-cv-00001-JMK　　Document 45　　Filed 02/14/24　　Page 8 of 17

operation of 43 U.S.C § 1631(b)(1)[50] automatically transferred title of the bed of the Kokolik River to Cully.[51]

Defendants argue that the State holds equitable title to the bed of the Kokolik River.[52] The parties do not dispute that DOI tentatively approved the State's F-033702 land application, which included the bed of the Kokolik River.[53] Defendants believe that DOI's 1977 Decision approved the uplands within Sections 2932 for conveyance to Cully, but that the bed of the Kokolik River remains tentatively approved for conveyance to the State and that the federal government did not retain an ownership interest in the bed of the Kokolik River.[54]

The Court finds that Cully owns the bed of the Kokolik River within Sections 2932 based on: (1) the plain language of ANCSA, (2) the 1977 Order, and (3) the State's inconsistent historical interpretations.

### (i) The Plain Language of ANCSA

ANCSA withdrew tentative approval over all lands within Township 5 North, Range 44 West, Umiat Meridian, including the bed of the Kokolik River within Sections 29–32. Specifically ANCSA withdrew "[t]he lands in each township that encloses

---

[50] "Whenever, . . . the Secretary conveys land to a [] Native Corporation . . . pursuant to the Alaska Native Claims Settlement Act . . . which abuts or surrounds a meanderable lake, river, or stream, all right, title, and interest of the United States, if any, in the land under such lake, river, or stream lying between the uplands and the median line or midpoint, as the case may be, shall vest in . . . the Native Corporation[]."
[51] Docket 9-1 at 21.
[52] Docket 15 at 21; Docket 28 at 10; Docket 14 at 18; Docket 26 at 45.
[53] Docket 9-6 at 1; Docket 15-36 at 1.
[54] Docket 15 at 22.

*Cully Corp., Inc. v. North Slope Borough, et al.*                                                                                   Case No. 2:23-cv-00001-JMK
Corrected Order Granting Motion for Partial Summary Judgment and Remanding to State Court          Page 9 of 17
Case 2:23-cv-00001-JMK   Document 45   Filed 02/14/24   Page 9 of 17

all or part of any Native village identified" by ANCSA as well as the "lands in each township that is contiguous to or corners on the township that encloses all or part of such Native village."[55] ANCSA further provides that "[a]ll lands located within the townships described . . . that have been selected by, or tentatively approved to, but not yet patented to, the State under the Alaska Statehood Act are withdrawn."[56]

The Native Village of Point Lay's core township is Township 5 North, Range 45 West, Umiat Meridian.[57] Contiguous to and directly east of Point Lay's core township is Township 5 North, Range 44 West, Umiat Meridian, which contains the disputed portion of the Kokolik River in Sections 29–32.[58] Because of its location in relation to Point Lay's core township, ANCSA withdrew all lands within the entire township which had been tentatively approved for transfer to the State. Under the plain language of ANCSA, DOI did not have discretion to maintain its tentative approval for any lands within Township 5 North, Range 44 West because they were withdrawn by statute.[59] The State's argument that DOI's tentative approval remained because of language in the 1977 Order is incompatible with the language of ANCSA withdrawing "all lands," even those which had been tentatively approved by DOI.[60]

---

[55] 43 U.S.C. § 1610(a)(1).
[56] 43 U.S.C. § 1610(a)(2).
[57] Docket 9-9 at 2.
[58] The Court takes judicial notice of Township 5 North, Range 44 West, Umiat Meridian's location in relation to Township 5 North, Range 45 West, Umiat Meridian.
[59] 43 U.S.C. § 1610(a)(2).
[60] 43 U.S.C. § 1610(a)(2).

*Cully Corp., Inc. v. North Slope Borough, et al.*            Case No. 2:23-cv-00001-JMK
Corrected Order Granting Motion for Partial Summary Judgment and Remanding to State Court    Page 10 of 17
Case 2:23-cv-00001-JMK   Document 45   Filed 02/14/24   Page 10 of 17

### (ii) DOI's 1977 Decision

The parties dispute how to interpret the 1977 Decision. Cully argues that the State can have no property interest in the bed of the Kokolik River within Sections 29–32 because the 1977 Order explicitly rejected the State's F-033702 land application.[61] The State argues that because the 1977 Decision explicitly excludes the bed of the Kokolik River within Sections 29–32, that DOI's prior tentative approval remains,[62] and that the ambiguity must be resolved by a final agency action by DOI.[63] The 1977 Decision states in relevant part:

> On December 23, 1965, tentative approval was given for the above lands [including Sections 2932] . . .
>
> On December 18, 1971, the Alaska Native Claims Settlement Act (85 Stat.688) became law. Section 11 of the act withdrew all of the above-mentioned townships for possible selection by the village of Point Lay.
>
> On November 15, 1973, Cully Corporation Inc. (the Point Lay village corporation) filed selection application F-14922-A under the provisions of section 12(a) of the Alaska Native Claims Settlement Act of December 18, 1971. Section 12(a)(1) provides that village selections shall be made from lands withdrawn by subsection 11(a): "Provided, That no Village Corporation may select more than 69,120 acres from lands withdrawn by subsection 11(a)(2)." Subsection 11(a)(2) of the act withdrew for possible selection by the village corporation those lands "that have been selected by, or tentatively approved to, but not yet patented to, the State under the Alaska Statehood Act."
>
> Village selection application F-14922-A, as amended, has been

---

[61] Docket 9-1 at 28–31.
[62] Docket 15 at 22–24.
[63] Docket 28 at 10, Docket 37 at 9.

*Cully Corp., Inc. v. North Slope Borough, et al.*                                            Case No. 2:23-cv-00001-JMK
Corrected Order Granting Motion for Partial Summary Judgment and Remanding to State Court     Page 11 of 17
Case 2:23-cv-00001-JMK    Document 45    Filed 02/14/24    Page 11 of 17

properly filed, and the lands are available for selection. Those portions of the village selection to be described are unoccupied and do not include any lawful entry perfected under or being maintained in compliance with laws leading to acquisition of title, other than the above-mentioned State selections.

Accordingly, for the above listed State selections, the tentative approval given in the decision of December 23, 1965 must be and is hereby vacated in part and the applications rejected as to the following described lands. In addition, the surface estate of the following described lands, aggregating approximately 65,624 acres is, considered proper for acquisition by the Cully Corporation Inc., and is hereby approved for interim conveyance pursuant to section 14(a) of the act:

. . .

T. 5 N., R. 44 W.
secs. 1 to 4, inclusive;
sec. 6;
secs. 8 to 30, inclusive;
sec: 31, excluding PLO 1851, Parcel 1;
secs. 32 to 36, inclusive; ·
**excluding** the Kasegaluk lagoon, the Chukchi Sea,
and **the Kokolik River upstream from its mouth
to, the east line of section 29.**

. . .

Therefore, the amount of validly State selected and tentatively approved land to be conveyed to Cully Corporation Inc. is 64,174 acres, which is less than the 69,120 acres they are entitled to· select under section 12(a)(l) of the act. **The following State selection applications have been rejected in their entirety, and when this decision becomes final, the cases will be closed:** F-033699, F-033701, **F-033702** [containing Sections 2932], F-033705, F-033708. Further action on the lands remaining in State selections F-033698, F-033700, F-033703, F-033704 1 and F-033707 will be taken at a later date.[64]

---

[64] Docket 9-7 at 2–4 (emphasis added).

*Cully Corp., Inc. v. North Slope Borough, et al.*                                              Case No. 2:23-cv-00001-JMK
Corrected Order Granting Motion for Partial Summary Judgment and Remanding to State Court         Page 12 of 17
Case 2:23-cv-00001-JMK   Document 45   Filed 02/14/24   Page 12 of 17

The Court agrees with Cully's interpretation. Cully's interpretation gives meaning to all of the 1977 Order, while the State's argument would render portions of the 1977 Order meaningless. The State fails to provide an explanation for what DOI meant when it "rejected in its entirety" the State's F-033702 application for lands including the bed of the Kokolik River.[65] Accepting the State's argument would require the Court ignore the express language in the 1977 Order rejecting the State's application in its entirety. Without an alternative explanation, the Court sides with Cully and follows the plain language of the 1977 Order. Where the 1977 Order expressly rejected the State's land application "in its entirety," the State was divested of any property interest previously granted by the 1965 tentative approval as to that land application. Where the 1977 Order excluded the bed of the Kokolik River, the federal government retained ownership of those lands.

### (iii) State's Inconsistent Positions

Lastly, the State's historical inconsistent interpretations undermine its present argument. Prior to 2013, the State believed it owned the bed of the Kokolik River within Sections 29–32.[66] In February 2013, the State determined that it did not own the bed of the Kokolik River within Sections 29–32, but subsequently, in May 2018, the State

---

[65] Docket 15 at 22–24 (claiming that the State's land selection to the bed of the Kokolik River was not affirmatively rejected); Docket 28 at 9–10 (claiming that the exclusion of the Kokolik River above gives the State equitable title in spite of application F-033702 being rejected in its entirety).

[66] Docket 15-21 ("The state owns the tidelands to the mean high water line in the case of the Kokolik River.").

*Cully Corp., Inc. v. North Slope Borough, et al.*                                                          Case No. 2:23-cv-00001-JMK
Corrected Order Granting Motion for Partial Summary Judgment and Remanding to State Court     Page 13 of 17
Case 2:23-cv-00001-JMK    Document 45    Filed 02/14/24    Page 13 of 17

determined that it did own the relevant lands.[67] Nothing in the record explains why the State's position changed.[68] During oral argument the Court asked the State if the bed of the Kokolik River within Sections 29–32 was included among the acreage the State is claiming for possible conveyance from the Federal Government to the State of Alaska.[69] Counsel for the State replied "[t]o my knowledge, as of right now, Your Honor, no."[70] The State's own everchanging position as to the ownership of the bed of the Kokolik River serves to undermine its current position that it holds title to the disputed lands.

For the reasons stated above, the Court agrees with Cully. In 1977, DOI retained ownership of the bed of the Kokolik River in Sections 29–32. In 1990, when DOI patented to Cully the lands surrounding the Kokolik River within Sections 29–32, the operation of ANCSA gave Cully legal title to the bed of the Kokolik River within Sections 29–32. Cully's Motion for Partial Summary Judgment is **GRANTED**.

**(B)   Remaining State Law Issues**

Defendants removed this action from state court because Cully alleged ownership of submerged lands beneath navigable waters, which is a question of federal law.[71] Defendants ask the Court to exercise supplemental jurisdiction over the remaining

---

[67] Docket 15-38 at 2 ("February 20, 2013 – It has been determined that the State does not own the shorelands within the Kokolik River in this area [Sections 2932] due to PLO 82. The adjacent land owner has title to the shorelands.").
[68] Docket 15-38 at 2 (referencing a letter from Realty Services but not providing any context to the letter or analysis from the letter).
[69] Docket 37 at 15.
[70] Docket 37 at 15.
[71] Docket 1 at 4–5.

*Cully Corp., Inc. v. North Slope Borough, et al.*   Case No. 2:23-cv-00001-JMK
Corrected Order Granting Motion for Partial Summary Judgment and Remanding to State Court   Page 14 of 17
Case 2:23-cv-00001-JMK   Document 45   Filed 02/14/24   Page 14 of 17

state law issues.[72] Defendants argue that Cully's state law claims are barred by, among other things, the relevant statute of limitations.[73] Cully argues that Defendants' actions including NSB's continued occupancy of Cully's land and the State's 2018 decision to reclassify a portion of Cully's land as a "material sale site," constitute a continuing trespass and are therefore not barred in their entirety by the relevant statute of limitations.[74]

Federal courts are courts of limited jurisdiction,[75] but may exercise supplemental jurisdiction over claims that form part of the same case or controversy.[76] Federal courts may decline to exercise supplemental jurisdiction where the court has already dismissed the claims over which it has original jurisdiction, as well as claims that raise novel issues of state law.[77] In deciding whether to exercise supplemental jurisdiction federal courts should consider, "judicial economy, convenience, and fairness to litigants."[78] Where all issues over which a federal court has original jurisdiction have been decided well in advance of trial, the remaining state law claims should generally be decided by the appropriate state court.[79]

---

[72] Docket 1 at 8; Docket 15 at 28.
[73] Docket 14 at 25, and Docket 15 at 27–28.
[74] Docket 20 at 30–38, and Docket 21 at 30–46.
[75] *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994).
[76] 28 U.S.C. § 1367(a).
[77] 28 U.S.C. § 1367(c).
[78] *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, (1966).
[79] *Id*. ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); *see also Harrell v. 20th Century Ins. Co.*, 934 F.2d 203, 205 (9th Cir. 1991) ("[I]t is generally preferable for a district court to remand remaining pendent claims to state court[.]").

*Cully Corp., Inc. v. North Slope Borough, et al.*  Case No. 2:23-cv-00001-JMK
Corrected Order Granting Motion for Partial Summary Judgment and Remanding to State Court    Page 15 of 17
Case 2:23-cv-00001-JMK   Document 45   Filed 02/14/24   Page 15 of 17

In this case, the only claim over which the Court has original jurisdiction is Cully's asserted ownership of submerged lands beneath the navigable Kokolik River.[80] Having found in favor of Cully above, the remaining claims and defenses are based solely on state law. These issues were previously briefed before the Superior Court for the State of Alaska, Second Judicial District at Kotzebue.[81] Given that both the Alaska Superior Court and this Court have received briefing, there does not appear to be any advantage in terms of judicial economy or convenience for this Court to adjudicate the remaining state law issues.

Furthermore, based on the briefing by the parties it appears that Alaska law regarding continuing trespass is not fully developed and may represent a novel issue of State law. Both sides acknowledge that, under Alaska law, where a continuing trespass exists, "each harmful act constitutes a new cause of action for statute of limitations purposes."[82] Predictably, the sides disagree on whether the facts of this case constitute a continuing trespass. NSB relies predominantly on Alaska case law examining continuing nuisance and case law from sister states examining continuing trespass.[83] For its part, Cully relies extensively on the Second Restatement of Torts to support its argument that Defendants' actions constitute a continuing trespass.[84] The State argues that its actions are

---

[80] Docket 1 at 4–6.
[81] Docket 1 at 4 ("On November 4, 2022, the State filed its Motion for Partial Summary Judgment against Cully seeking a finding that Cully's claims against the State are time-barred, barred by the doctrine of laches, and fail to state a claim upon which relief could be granted.").
[82] Docket 14 at 26; Docket 15 at 30 n. 100; Docket 20 at 33–34; Docket 21 at 38; Docket 26 at 7 (citing *Oaksmith v. Brusich*, 774 P.2d 191, 200 n.10 (Alaska 1989)).
[83] Docket 14 at 25–31.
[84] Docket 20 at 33–37; Docket 21 at 37–40.

*Cully Corp., Inc. v. North Slope Borough, et al.*            Case No. 2:23-cv-00001-JMK
Corrected Order Granting Motion for Partial Summary Judgment and Remanding to State Court     Page 16 of 17
Case 2:23-cv-00001-JMK     Document 45     Filed 02/14/24     Page 16 of 17

insufficient to constitute a continuing trespass.[85] Neither the State nor Cully provide case law to determine the contours of continuing trespass in the context of a party permitting another party occupy lands the original party does not actually own. Continuing trespass appears to be a novel issue best suited for the state court system to adjudicate.

Because the Court has decided the only claim for which it had original jurisdiction, the Court has discretion whether to exercise supplemental jurisdiction over the remaining state law claims and defenses. Judicial economy, convenience, and fairness to the litigants strongly favor remanding the remaining issues to state court. Therefore, Defendant's motions for summary judgment are **DENIED**, the case is **REMANDED** back to the Superior Court for the State of Alaska, Second Judicial District at Kotzebue.

## IV.  CONCLUSION

For the reasons stated above: Cully's Motion for Partial Summary Judgment at Docket 9 is **GRANTED**. Defendant's motions at Dockets 14 and 15 are **DENIED**. The case and its remaining state law claims and defenses is **REMANDED** back to the Superior Court for the State of Alaska, Second Judicial District at Kotzebue.

IT IS SO ORDERED this 14th day of February 2024, at Anchorage, Alaska.

> */s/ Joshua M. Kindred*
> JOSHUA M. KINDRED
> United States District Judge

---

[85] Docket 28 at 15–19.

*Cully Corp., Inc. v. North Slope Borough, et al.*   Case No. 2:23-cv-00001-JMK
Corrected Order Granting Motion for Partial Summary Judgment and Remanding to State Court   Page 17 of 17
Case 2:23-cv-00001-JMK   Document 45   Filed 02/14/24   Page 17 of 17